**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
In re                           :      Chapter 11
                                 :
INNAPHARMA, INC.,          :      Case No. 8-03-82550
                                 :
               Debtor.    :
                                 :      Judge:  STAN BERNSTEIN
-------------------------------------------------------x

### MOTION OF THE UNOFFICIAL COMMITTEE OF SHAREHOLDERS PURSUANT TO 11 U.S.C. § 1102(A)(2) FOR APPOINTMENT OF AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS

The Innapharma Shareholders' Committee, consisting of individual holders of common stock of Innapharma, Inc. (the "Debtor"), that have organized as an unofficial committee of shareholders (as such, the "Unofficial Shareholders' Committee"), hereby moves (the "Motion") for entry of an order pursuant to section 1102(a)(2) of title 11 (the "Bankruptcy Code") of the United States Code, appointing an official committee of equity security holders (the "Official Equity Holders' Committee").  In support of its Motion, the Unofficial Shareholders' Committee represents the following:

### JURISDICTION

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. sections 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Sections 105(a) and 1102(a)(2) of the Bankruptcy Code provide the statutory bases for the relief sought herein.

## BACKGROUND

**The FDA's Suspension of Human Testing of Nemifitide and Commencement of the Chapter 11 Case**

2.     This chapter 11 case was commenced by the Debtor's filing of a voluntary petition in this Court on April 15, 2003 (the "Petition Date").

3.     The Debtor is a drug research and development company whose assets are various patents for the anti-depression drug Nemifitide.  Since its founding in 1989, the Debtor has required significant equity investments to sustain its high-tech research and development efforts.  The Debtor raised its equity through a series of private placements aggregating more than $60 million.

4.     According to the Debtor's Amended Schedules of Assets and Liabilities (the "Amended Schedules"), the Debtor's current outstanding equity interests are comprised of 20,344,392 shares of common stock and 67,615 shares of preferred stock.  The Debtor's outstanding common and preferred stock is held by approximately 1,000 individuals and entities.  The Unofficial Shareholders' Committee collectively represents the holders of approximately 15% to 20% of the Debtor's outstanding common stock.

5.     Shortly before the Petition Date, the U.S. Food and Drug Administration ("FDA") suspended human testing of Nemifitide upon discovery of side effects in a study of Beagles (the "Beagle Test").

6.     The Debtor does not have any secured debt and has not obtained any debtor in possession financing.  In the Debtor's Amended Schedules, the Debtor states that its assets exceed its liabilities by $1,094,496.00, and that it had, as of the Petition Date, more than $2.1 million in unencumbered cash (although it appears from the

Debtor's monthly operating reports that it is using cash at a significant rate post-petition). As such, it appears that the Debtor may be solvent, or at least may have sufficient cash and other assets (the Debtor holds approximately 100 Nemifitide-related patents) to pay its general unsecured creditors in full.

7.    Counsel for the Debtor has represented to the Court that it has retained a "blue ribbon panel" of scientific experts to review the results of the Beagle Test and evaluate the efficacy of the testing itself for purposes of determining whether the Debtor can obtain FDA approval to resume human testing of Nemifitide and ultimately bring the drug to market. In addition, the Debtor retained Huntingdon Life Sciences ("Huntingdon ") prepetition to conduct additional tests on Nemifitide, which tests are apparently complete (the "Huntingdon Tests"). To date, however, the Debtor has not released the results of the Huntingdon Tests or reported on the progress of the "blue ribbon panel" to the Creditors' Committee or the Unofficial Shareholders' Committee. As such, the critical question in the Debtor's chapter 11 case —whether it will ever be able to market Nemifitide and become a profitable going concern— remains unanswered, notwithstanding the fact that the Official Committee of Unsecured Creditors (the "Creditors' Committee") requested the Debtor to release the Huntingdon Test results in June, 2003.

**Formation of the Unofficial Shareholders' Committee and Efforts to Obtain Shareholder Data from the Debtor**

8.    Driven in part by the Debtor's failure to provide information and/or answer critical questions regarding the Debtor's conduct and financial affairs posed by certain of its members in the months leading up to the Petition Date, the Unofficial

Committee was compelled to organize in order to act to maximize any prospect of protecting the value of its members' equity security interests.

9.      In May, 2003, the Unofficial Shareholders' Committee requested the UST to appoint an Official Equity Holders' Committee.[1]  To that end, the Unofficial Shareholders' Committee and the UST agreed that the Unofficial Shareholders' Committee would seek the Debtor's cooperation in providing addresses and contact information for a number of the Debtor's significant shareholders.  Subsequently, counsel for the Debtor agreed to deliver the requested shareholder information directly to the UST.[2]  To date, however, the Debtor has not provided the information as agreed.

10.      On June 3, 2003, the Unofficial Committee sent Debtor's counsel and Martin F. Schacker, the Debtor's co-Chief Executive Officer, a formal request under applicable Delaware corporate law for access to the Debtor's current stock ledger and list of all stockholders' addresses, among other things.[3]  To date, the Debtor has not responded to that request.

**Pending Motions to Appoint a Chapter 11 Trustee or Convert the Case and Settlement Discussions Between the Debtor and the Creditors' Committee**

11.      On June 27, 2003, the Creditors' Committee filed a Motion (the "Creditors' Committee Motion") seeking, among other things, to appoint a chapter 11 trustee to manage the Debtor's business or, in the alternative, conditioning the Debtor's use of cash on the posting of a $2 million letter of credit in favor of unsecured creditors.

---

[1]     True and accurate copies of the May 13, 2003 and June 21, 2003 letters to the UST requesting the appointment of an Official Equity Holders' Committee are attached collectively hereto as Exhibit A.

[2]     A true and accurate copy of the July 3, 2003 letter to the UST and Debtor's counsel memorializing such agreement is attached hereto as Exhibit B.

[3]     A true and accurate copy of the June 3, 2003 letter to Mr. Schacker is attached hereto as Exhibit C.

The Unofficial Shareholders' Committee filed a Memorandum in Support of the Creditors' Committee's request for appointment of a chapter 11 trustee.

12.     On July 14, 2003, the United States Trustee filed a Motion (the "UST Motion") seeking an order converting the case to a chapter 7 liquidation, or in the alternative, dismissing the case. The Unofficial Shareholders' Committee filed an Objection to the UST's request to convert the case. Both the Creditors' Committee Motion and the UST Motion are scheduled for hearing before the Court on August 21, 2003.

13.     Although the UST has not specifically declined to appoint an Official Equity Holders' Committee, in light of the nature of the UST Motion, it appears that the UST will not seek appointment of an Official Equity Holders' Committee of its own accord.

14.     At a hearing on the Creditors' Committee Motion on August 7, 2003 (which hearing was adjourned to August 21), counsel for the Debtor and the Creditors' Committee represented that the two were negotiating a settlement agreement providing for a $675,000 distribution to unsecured creditors and escrowing of $200,000 for professional fees and other administrative expenses. While counsel for the Unofficial Shareholders' Committee is not privy to the details of such agreement, counsel for the Debtor and the Creditors' Committee have indicated that the settlement would require the Debtor to prosecute a plan of reorganization and obtain working capital financing on a swift timetable (*i.e.*, with a plan being filed by September 15, 2003 and a financing commitment being obtained by late October, 2003). Counsel for the Unofficial Shareholders' Committee further understands that the settlement would mandate the

withdrawal of the Creditors' Committee's request for the appointment of a chapter 11 trustee.

15.     In light of the fact that the Creditors' Committee and UST Motions are set for hearing on August 21, the Unofficial Shareholders' Committee has filed concurrently herewith a Request for Expedited Hearing on this Motion seeking a hearing on this Motion on August 21, 2003.

## RELIEF REQUESTED AND THE REASONS THEREFOR

16.     By this Motion, the Unofficial Shareholders' Committee requests the appointment of an Official Equity Holders' Committee pursuant to section 1102(a)(2) of the Bankruptcy Code, which provides:

> On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee.[4]

17.     Appointment of an official committee of equity security holders is appropriate where there is sufficient equity in the estate to justify the cost and expense of a separate committee.[5] The number of the Debtor's shareholders and the complexity of the case also should be taken into consideration.[6] It is only in cases where the Debtor appears to be "hopelessly insolvent" that appointment of an equity security holders' committee should be absolutely foreclosed.[7]

---

[4]     FED. R. BANKR. P. 1102(a)(2).

[5]     *See In re Wang Laboratories, Inc.,* 149 B.R. 1 (Bankr. D. Mass. 1992).

[6]     *In re Williams Communications Group, Inc.,* 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002).

[7]     *See Wang Laboratories,* 149 B.R. 1 (finding appointment of equity committee proper after the UST failed to do so on the grounds that the debtor was not hopelessly insolvent and the large number of equity holders justified appointment).

6

18.     In *In re Wang Laboratories, Inc.*, the United States Bankruptcy Court for the District of Massachusetts appointed an official shareholders committee because there were a significant number of shareholders and there was a lack of sufficient, consistent information demonstrating that the debtor was certainly and "hopelessly" insolvent.[8] In addition, the *Wang* court found that appointment of an official shareholders' committee was appropriate, notwithstanding the fact that the debtor was operating at a loss post-petition.[9]

19.     Here, the facts that the Debtor (1) has approximately 1,000 shareholders, (2) does not have any priority secured debt and (3) can not be demonstrated to be "hopelessly" insolvent all weigh in favor of appointment of an Official Equity Holders' Committee.  On the one hand, the facts before the Court (*i.e.*, the Debtor's Amended Schedules) indicate a sincere possibility of recoveries for the Debtor's shareholders.  On the other hand, there are no facts before the Court demonstrating that the Debtor is definitely and "hopelessly" insolvent (indeed, under the "balance sheet" definition of "insolvent" in section 101(32) of the Bankruptcy Code, the Debtor appears to be solvent because Debtor's scheduled assets exceed its scheduled liabilities).  Moreover, significantly all of the Debtor's working capital was raised from equity investments.  Accordingly, the Debtor's 1,000 shareholders have a potentially significant stake in the Debtor's estate and should be empowered to advocate their interests and preserve their rights via an official committee.

20.     Thus far, at least seven members of the Unofficial Shareholders' Committee have agreed to serve on the Official Equity Holders' Committee.  Moreover,

---

[8]     *See id.* at 3-4.
[9]     *See id.* at 3, fn. 4.

the Unofficial Shareholders' Committee is in the process of offering other common stockholders the opportunity to join the Unofficial Shareholders' Committee. It is expected that such offering will result in a substantial increase in the number of participating members, with the commensurate increase in the percentage ownership of all outstanding common stock.[10]

21.    The Debtor is a drug research and development business that was established by, and must rely upon, equity investments. As such, the Debtor's sources of post-petition working capital financing will likely include, or come solely from, some of the Debtor's shareholders. Accordingly, the appointment of an Official Equity Holders' Committee is necessary to ensure adequate representation of the interests of shareholders whose stake in the case may increase significantly.

## NOTICE

22.    This Motion and the Request for Expedited Hearing thereon have been served upon the Debtor, counsel for the Debtor, the UST and counsel for the Creditors' Committee by overnight courier. In lieu of service of a notice of hearing on the Motion, the Unofficial Shareholders' Committee will serve a copy of the order granting the Request for Expedited Hearing on the Debtor, counsel for the Debtor, the UST and

---

[10]    Section 1102(b)(2) of the Bankruptcy Code provides that an equity security holders committee shall "ordinarily" consist of the persons, willing to serve, that hold the seven (7) largest amounts of equity securities of Debtor. The Bankruptcy Code's legislative history and interpretive appellate case law clearly provide that this language is not an actual requirement. *See In re White Motor Credit Corp.*, 27 B.R. 554 (N.D. Ohio 1982)(holding that section 1102(b)(2) merely a guideline from whence there may be variation and exception and finding that 2 to 1 ratio of small shareholders to large shareholders proper where the bankruptcy court limited its appointments to those persons who expressed an interest in serving).

counsel for the Creditors' Committee by overnight courier or other expedited means. The Unofficial Shareholders' Committee submits that such service and notice is adequate under the circumstances and that no further service or notice is required.

WHEREFORE, the Unofficial Shareholders' Committee respectfully requests the Court to enter an order (i) pursuant to section 1102(a)(2) Bankruptcy Code appointing the Official Equity Holders' Committee and (ii) granting such other and further relief as is just and proper in the premises.

Dated:    Cleveland, Ohio
          August 12, 2003

Respectfully submitted,

/s/ Stuart A. Laven, Jr.
William E. Schonberg   (OBR #0025140)
Stuart A. Laven, Jr.     (OBR #0071110)
BENESCH, FRIEDLANDER,
     COPLAN & ARONOFF LLP
2300 BP Tower
200 Public Square
Cleveland, OH  44114-2378
(216) 363-4500
(216) 363-6118 or 4588 (Facsimile)
wschonberg@bfca.com
slaven@bfca.com

***Attorneys for the Unofficial Shareholders' Committee***

# CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Motion of the Unofficial Committee of Shareholders Pursuant to 11 U.S.C. §1102(a)(2) for Appointment of an Official Committee of Equity Security Holders* was served upon all of the parties listed below by overnight courier this 12th day of August, 2003:

Cavanagh, Terese A.
Assistant United States Trustee
560 Federal Plaza, Suite 560
Long Island Federal Courthouse
Central Islip, NY 11722

Innapharma, Inc.
200 Broadhollow Rd.
Suite 401
Melville, NY 11747

Innapharma, Inc.
1 Maynard Drive
Suite 205
Park Ridge, NJ 07656

Silverman Perlstein & Acampora
Attn: Gerald R. Luckman
100 Jericho Quadrangle Suite 300
Jericho, NY 11753

United States Trustee
Attn: Carolyn S. Schwartz
33 Whitehall Street, Suite 2100
New York, NY 10004

Nixon & Peabody
Attn: Douglas E. Spelfogel
990 Stewart Avenue
Garden City, NY 15130

/s/ Stuart A. Laven, Jr.

Doc 1132920 Ver 1



# BENESCH
## Friedlander Coplan & Aronoff LLP
### ATTORNEYS at LAW

*William E. Schonberg*
Writer's Direct Dial  (216) 363-4634

May 13, 2003

*VIA FACSIMILE*
*AND REGULAR MAIL*

Carolyn S. Schwartz
United States Trustee
33 Whitehall Street, Suite 2100
New York, NY  10004

Terese A. Cavanagh
Assistant United States Trustee
560 Federal Plaza, Suite 560
Long Island Federal Courthouse
Central Islip, NY 11722

Re:  Innapharma, Inc., Debtor (the "Debtor");
     Chapter 11 Case No. 8-03-82550-sb

Dear Ms. Schwartz and Ms. Cavanagh:

This Firm represents a group of approximately 15 individual holders of the Debtor's voting common stock who have formed and constituted themselves as an unofficial committee of shareholders (the "Unofficial Committee"). The Unofficial Committee (together with those shareholders expected to join it) collectively represents approximately 15% to 20% of the Debtor's outstanding common stock.

On behalf of the Unofficial Committee, we write to request that, pursuant to Section 1102(a)(1) of the Bankruptcy Code, the United States Trustee ("UST") appoint an equity security holders' committee (the "Official Committee") in the Debtor's case. At least seven (7) members of the Unofficial Committee have agreed to serve on the Official Committee. Moreover, the Unofficial Committee is in the process of offering other holders of the Debtor's common stock the opportunity to join the Unofficial Committee, the result of which is an expected material increase in the percentage of the Debtor's outstanding common stock participating in the Unofficial Committee. If appointed, the Unofficial Committee envisions that the Official Committee would essentially supplant the Unofficial Committee to pursue those essential and time-sensitive actions necessary to adequately represent all common shareholders in this case and thereby maximize the prospect of preserving any value of their equity security interests.

**EXHIBIT**

A

There exists the potential for rapid developments in the Debtor's case. Crucial determinations and responses will have to be made respecting actions by the Debtor that in all likelihood would directly impact all shareholders. The over 1000 holders of the Debtor's 20.3 million shares of common stock currently have no voice in this case. The immediate appointment of the Official Committee will assure adequate representation of a constituency whose interests mandate representation in the context of the case and, ultimately, plan formulation.

We are very aware of the sensitivities to avoiding duplication of effort and realizing efficiencies. The recently appointed three (3) person Unsecured Creditors' Committee will represent the interests of creditors holding approximately $1.25 million of claims (with the schedules reflecting no secured or priority claims). In light of the estate's apparent solvency (approximately $2.1 million of apparently unencumbered cash at the petition date), the Debtor's preferred and common equity interests have possible reorganization value. Thus, while the unsecured creditors are represented, the holders of the common stock are entitled to representation by the Official Committee. Indeed, an Official Committee will actually facilitate plan formulation and not create unnecessary administrative expense, especially considering that a plan will affect several classes of debt and equity interests.

Section 1102(b)(2) of the Bankruptcy Code provides that an equity security holders committee shall "ordinarily" consist of the persons, willing to serve, that hold the seven (7) largest amounts of equity securities of the debtor. However, this guideline pertains to a committee appointed by the UST at the Bankruptcy Court's direction under subsection (a)(2), on request of a party in interest. Moreover, the legislative history makes it clear that the language suggesting that an equity committee be comprised of the "seven (7) largest holders" is only precatory.

Many issues will quickly arise in the Debtor's case that relate directly to the interests of all shareholders. For example, the Debtor's corporate resolution authorizing filing of the voluntary petition states that it is "unable to pay its debts as they mature," despite the apparent existence of unencumbered cash in excess of indebtedness. It's likely the Debtor will utilize such cash to fund operations and/or seek DIP financing with superpriority administrative expense status, thereby potentially depleting any petition date value of the Debtor's equity interests. Further, as a research and development business that was established by, and must rely upon, equity investments, the Debtor will likely seek to raise new equity or other "venture" capital to acquire the new equity securities that can be expected to be issued by the reorganized debtor under its plan, further directly impacting the interests of all current common stockholders. Appointment of the Official Committee is the only effective way to assure adequate representation of the Debtor's common stockholders at this important juncture of the case and in the context of plan formulation.

There are many precedents for the appointment of official equity security holders committees. See, Heilig-Meyers, A.H. Robbins, Zenith, Johns Manville and Eagle Pitcher. The Debtor's reorganization case fits within the relevant fact patterns of many of these cases. However, given the Debtor's prior history of being unresponsive to efforts by certain shareholders to obtain critical information, as exemplified by the Debtor's conduct forcing the prepetition commencement of an action in Delaware Chancery Court to compel the turnover of a current list of stockholders, the Debtor can be expected to oppose this request. Nonetheless, with the Debtor's equity interests as the likely "targets" under a plan in light of the relatively small size of the class of unsecured claims, the Debtor cannot be heard to legitimately dispute the propriety and, indeed, the need for the appointment of the Official Committee.

In conclusion, the Unofficial Committee believes that the immediate appointment of the Official Committee is necessary to assure adequate representation of the interests of all equity security holders. The Debtor and unsecured creditors should share a common interest in promoting efficiency of the reorganization effort by assuring adequate representation of equity security holders as the Debtor commences plan formulation.

We recognize the very difficult task that the UST has in making these decisions. We hope that the information contained in this letter will enable you to consider this request and proceed under Section 1102(a)(1) to appoint the Official Committee. To that end, please feel free to call me should you have any questions. We can directly communicate with the Unofficial Committee to obtain additional information and, upon your request, provide to you a list of all the Committee's members.

Very truly yours,

William E. Schonberg

WES/cog
cc:    Innapharma Shareholders' Committee



*William E. Schonberg*
Writer's Direct Dial (216) 363-4634

June 21, 2003

## *VIA FACSIMILE*
## *AND REGULAR MAIL*

Terese A. Cavanagh, Esq.
Assistant United States Trustee
560 Federal Plaza, Suite 560
Long Island Federal Courthouse
Central Islip, NY 11722

Re:     Innapharma, Inc., Debtor (the "Debtor");
         Chapter 11 Case No. 8-03-82550-sb

Dear Terese:

It was a pleasure discussing with you yesterday the Unofficial Shareholders' Committee's request, made originally by my letter of May 13, that the United States Trustees ("UST"), pursuant to Section 1102(a)(1) of the Bankruptcy Code, appoint an equity security holders' committee in the Debtor's case (the "Official Committee"). This confirms the salient points of our discussion.

As we discussed, the Debtor's case presents a unique set of facts and circumstances. Even considering the Debtor's recently filed amended schedules, which attribute no value to certain intellectual property, it appears that the estate is solvent and, thus, certain of the Debtor's equity interests have possible value. Moreover, the Debtor has made it known that it is formulating a plan of reorganization that contemplates offering all existing equity holders the opportunity to participate in an approximate $4 million equity raise on a basis reasonably equivalent to their respective present percentage equity holdings. Presumably, the Debtor's plan will also provide for full satisfaction of unsecured claims, which, at this point, appear capable of being satisfied from the Debtor's unencumbered cash assets. Given the Debtor's June 12 written communication to its shareholders that embodies this plan formulation approach, an Official Committee, representative of all equity holders, would facilitate plan formulation.

Consistent with the above, we agreed that the Official Committee could serve an appropriate and constructive role in the case, but that holders of the Debtor's preferred and common stock should all be accorded the opportunity to serve on the Official Committee. Provided we provide the necessary shareholder data (described below), you have agreed that the UST will disseminate to holders of the largest (and certain smaller) amounts of preferred and common stock a solicitation

of interest in serving on an Official Committee. To that end, I will endeavor to promptly provide you a list, including contact information, of the holders of the largest amounts of the Debtor's preferred and common stock, as well as holders of mid-range and smaller amounts (such as members of the Unofficial Shareholders' Committee), to enable you to solicit interest in serving on an Official Committee from a "representative body" of holders of all the Debtor's equity securities. We also agreed that, subject to the responses received, the Official Committee should be balanced as evenly as possible between holders of preferred and common stock.

On behalf of the Unofficial Shareholders' Committee, I thank you for your fair and enlightened consideration and response to our request. An Official Committee will facilitate adequate representation of all interests in this reorganization case, promoting fairness and efficiencies that will facilitate formulation of a reorganization plan that serves the best interests of all constituencies.

Very truly yours,

William E. Schonberg

WES/gam
cc:     Unofficial Shareholders' Committee



**BENESCH**
Friedlander Coplan
& Aronoff LLP
A T T O R N E Y S at L A W

*Gregory K. Gale*
Writer's Direct Dial (216) 363-4451
E-mail: ggale@bfca.com

July 3, 2003

**VIA FACSIMILE (631/715-7777)**
**AND REGULAR MAIL**

Terese A. Cavanagh, Esq.
Assistant United States Trustee
560 Federal Plaza, Suite 560
Long Island Federal Courthouse
Central Islip, NY 11722

Re:    Innapharma, Inc., Debtor (the "Debtor"); Chapter 11 Case No. 8-03-82550-sb

Dear Ms. Cavanagh:

This letter is in follow-up to Bill Schonberg's letter to you of June 21, 2003 concerning the UST's solicitation of willingness and agreement by the Debtor's shareholders to serve on an Official Shareholders' Committee.

To enable your office to disseminate the solicitations of interest, enclosed are lists of all of the holders of the Debtor's preferred stock and holders of the largest amounts of the Debtor's common stock, as well as holders of mid-range and smaller amounts. From such representative group, the enclosed Exhibit A is contact information for certain preferred shareholders and for certain holders of common equity that we were able to obtain. Exhibit B is a list of the remaining preferred stockholders and remaining common equity holders for which we do not have contact information. Together, these stockholders consist of all the preferred stockholders, the largest holders of common equity, and certain other representative common equity holders.

Yesterday Gerry Luckman, Debtor's counsel, agreed with Bill Schonberg to have the Debtor provide directly to your office the contact information for those stockholders listed on Exhibit B (for which we do not have contact information). By copy of this letter, we are requesting that Gerry Luckman provide your office with such information as soon as is practicable.

Consistent with Bill Schonberg's June 21, letter, we trust that the UST will now proceed expeditiously to disseminate solicitations of agreement to serve as members of an Official Shareholders' Committee to be appointed by the UST in the Debtor's case.

**EXHIBIT**

*tabbies*  B

Terese A. Cavanagh, Esq.
July 3, 2003
Page 2

Thank you for your attention to this request and please do not hesitate to contact me if you have any questions regarding the same.

Sincerely,

Gregory K. Gale

cc:     Gerard R. Luckman, Esq. (via facsimile w/ encl.)
        Unofficial Shareholders' Committee (via e-mail w/encl.)
        William E. Schonberg, Esq. (w/o encl.)

## EXHIBIT A
## STOCKHOLDER ADDRESSESS

| NAME | ADDRESS |
|---|---|
| **COMMON** | |
| Abel, David (insider) | 1 Maynard Drive, Suite 205, Park Ridge, NJ 07656 |
| Falk, Stephen & Sheila | 17 Professional Park, Webster, TX 77598 |
| Feighner, John P. & Anne C.* | 5375 Mira Sorrento Place, Suite 210, San Diego, CA 92121 |
| Gallo, Thomas | 23 Trafalgar Place, Shrewsbury, NJ 07702 |
| Garnick, Michael & Denise | 1590 Stockton Rd., Meadowbrook, PA 19046 |
| Gass, Douglas | 2 Fairfax Road, Massapequany, NY 11758 |
| Hufnagl, Gunther* | 4180 Silverando Trail, Napa, CA 94558 |
| Misna, Timothy* | 23 Chatham Lane, Oak Brook, IL 60521 |
| Rapaport, Michael | 5089 Kestral Parkway South, Sarasota, FL 34231 |
| Rosenblum, Marvin J. & Regina | 33 North Dearborn St., Chicago, IL 60602 |
| Rozel Int'l Holdings Ltd. | P. O. Box 3151, Roadtown, Tortola |
| Ruben, Arno & Cornelia* | 2840 Churchill Dr., Hillsborough, CA 94010 |
| Rubin, Robert M. | 6060 Kinas Gatae Circle, Delray Beach, FL 33486 |
| Sacheen LB Corporate | Lohrstr, 16D-04105, Leipzig, Germany |
| Schacker, Martin F. (insider) | 1 Maynard Drive, Suite 205, Park Ridge, NJ 07656 |
| Titto, Seppo & Kirsti | 132 Justabout Road, VeNetta, Pa 15367 |
| | |
| **CLASS A PREFERRED** | |
| Grande, Charles | 53 Oxford Road, Manalapan, NJ 07726 |
| Keehn, Adolph | 16 Shawnee Avenue, Roakaway, NJ 07866 |
| Low, Eng-Chye | 200 E. 89th St. NY, NY 10016 |
| Reimers, Linda & Wilson | 305 Durtle Avenue, Closter, NJ 07624 |
| Rives, Douglas A. | 955 Westersham Place, Marietta, GA 30064 |
| Thompkins, Reginald | 1 Brighton Avenue, Belleville, NJ 07109 |
| Zisa, Joseph C. | 77 Hudson St., Hackensack, NHJ 07601 |
| | |
| **CLASS D PREFERRED** | |
| KBC Bank NV | Havenlaan 21080, Brussells, Belgium |
| | |
| | |
| * Hold shares individually, as joint tenants and/or as trustees | |

Terese A. Cavanagh, Esq.
July 3, 2003
Page 4

## EXHIBIT B
## NEED STOCKHOLDER ADDRESSESS

| NAME | ADDRESS |
|---|---|
| | |
| **COMMON** | |
| Emy LLC | |
| Kent Investment Holdings, Ltd. | |
| Q Finance, Inc. | |
| Realty Negotiators, Inc. Defined Benefit Plan | |
| Seehafen Rostock Umschlagsgesellschaft mbH | |
| Stiftelsen Volvorsultat | |
| Swan Alley | |
| | |
| **CLASS C** | |
| Lyonshare Venture Capital | |
| | |
| | |
| **CLASS D** | |
| CFH Beteligungsgesellschaft MBH | |
| European Development Capital Corporation NV | |
| Fidea NV | |
| KBC Equity Fund NV | |
| KBC Private Equity Fund Bio Tech NV | |
| KBC Verzekeringen NV | |
| Nancy Chang | |
| Stichting Ruischend Loof | |

1136543 Ver I



**BENESCH**
Friedlander Coplan
& Aronoff LLP
ATTORNEYS at LAW

Gregory K. Gale
Writer's Direct Dial  (216) 363-4451
E-mail:  ggale@bfca.com

June 3, 2003

**VIA FACSIMILE (516/479-6301)**
**AND CERTIFIED MAIL**
Gerard R. Luckman, Esq.
Silverman, Perlstein & Acampora
100 Jerico Quadrangle, Suite 300
Jerico, NY  11753

**VIA FACSIMILE (201/505-1503)**
**AND CERTIFIED MAIL**
Martin F. Schacker
Co-Chief Executive Officer
Innapharma, Inc.
One Maynard Drive, Suite 205
Park Ridge, NJ  07656

Re:  *Innapharma, Inc.*

Dear Messrs. Schacker & Luckman:

This Firm represents the stockholders of Innapharma, Inc. ("Innapharma") listed on the attached
Exhibit A that have formed and constituted themselves as an unofficial stockholders committee
(the "Unofficial Committee").  On behalf of the Unofficial Committee, demand is hereby made
under Section 220 of the Delaware General Corporation Law (the "DGCL") that a representative
of the Unofficial Committee be given access during usual business hours to inspect the following
Innapharma documents:

     I.     current stock ledger;
     II.    a list of all stockholders' addresses and other contact information;
     III.   the Certificate of Incorporation and By-Laws; and
     IV.   any stockholder agreement, voting trust, subscription agreement or other agreement
           or document that governs the rights and preferences of equity securities of
           Innapharma and/or the voting of such securities.

The Unofficial Committee's purposes in demanding access to these materials is to contact
stockholders in order to request a special stockholders' meeting and to solicit proxies in order

**EXHIBIT**
tabbies
C

Gerard R. Luckman, Esq.
Martin F. Schacker
June 3, 2003
Page 2

consider the replacement of some or all members of Innapharma's current Board of Directors at such special meeting.

In accordance with Delaware law, attached are Powers of Attorney from each of the stockholders listed on the attached <u>Exhibit A</u>.

Pursuant to Section 220(c) of the DGCL, we expect a reply to this demand within five (5) business days of the date hereof. Failure to so comply will result in our client's exercising its full rights under law.

I hereby swear, attest and affirm that this demand is being made under oath in accordance with Section 220 of the DGCL.

Sincerely,

Gregory K. Gale

GKG:meq
attachments
cc:     Dr. William Comer (via facsimile and U.S. mail)
        Alf Akerman (via e-mail)
        Hendrik Liebers (via e-mail)
        Dr. John Feighner (via facsimile and U.S. mail)
        Robert Budetti (via facsimile and U.S. mail)
        Dr. Ken Cartwright (via facsimile and U.S. mail)
        Douglas Gass (via e-mail)

Gerard R. Luckman, Esq.
Martin F. Schacker
June 3, 2003
Page 3


STATE OF OHIO              )
                           ) SS:
COUNTY OF CUYAHOGA         )

BEFORE ME, a Notary Public in and for said County and State, personally appeared Gregory K. Gale, who acknowledged that he did sign the foregoing instrument as counsel for and on behalf of the stockholders listed on the attached Exhibit A and that the same is his free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and official seal at _Cleveland_, _Ohio_, this _3rd_ day of June, 2003.

_Charlotte R. Huff_
Notary Public
My commission expires:_____

CHARLOTTE R. HUFF, NOTARY PUBLIC
State of Ohio
My Commission Expires January 15, 2008

## EXHIBIT A
## INNAPHARMA STOCKHOLDERS

Daniel F. Carroll

Janis F. Carroll

Rita M. Chapman and Lyle A. Chapman

Gregory Gallo

Thomas A. Gallo

Gunther Hufnagl Living Trust

Timothy M. Misna & Kathryn K. Misna, TRS Timothy M. Misna &
    Associates Ltd. Retirement Trust U/A Dtd. 1/1/97

Timothy M. Misna & Kathryn K. Misna, TTEES Timothy M. Misna &
    Associates Ltd. Retirement Trust U/A Dtd. 1/1/97

Timothy M. Misna & Associates Retirement Trust U/A Dtd. January 1, 1997

Charles H. Montgomery

Imogene Montgomery

Claudia Paolini (C. Farina)

Josephine Paolini

Pasquale Paolini

Michel Rapoport

Brendan Rempel

Anthony Shenk

Charles "Berke" Wilson