Silverman Perlstein & Acampora LLP
Counsel to the Debtor and the Debtor-In-Possession
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman, Esq. (GRL#8516)

11-3489052

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT CENTRAL ISLIP
----------------------------------------------------------------x
In re:

                             Chapter 11
                             Case No: 03-82550-288

      INNAPHARMA, INC.,

                      Debtor.

----------------------------------------------------------------x

## MOTION SEEKING AUTHORITY FOR DEBTOR TO OBTAIN DEBTOR IN POSSESSION FINANCING AND GRANT POST-PETITION LIENS WITH PRIORITY OVER ALL OTHER INDEBTEDNESS PURSUANT TO §364 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 4001

**TO:   Judge Stan Bernstein
       United States Bankruptcy Judge**

Innapharma, Inc., Debtor and Debtor-in-Possession herein (the "Debtor"), by its attorneys Silverman Perlstein & Acampora LLP, respectfully sets forth and alleges as follows:

### INTRODUCTION

On April 15, 2003 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization in accordance with Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York (the "Court").

1.    The Debtor has continued in the management of its affairs and the operation of its business and property as a Debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2.    No Trustee or examiner has been appointed in this proceeding. On May 9, 2003, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee retained Nixon Peabody, LLP as its counsel.

3.    The Debtor is a privately held biotechnology company working to discover, develop

grl/D133506v/F046142

and commercialize proprietary biotechnology products that treat serious diseases for which current therapies are inadequate. The Debtor maintains its principal place of business at 1 Maynard Drive, Park Ridge, New Jersey 07656 (the "Premises"). Through the substantial efforts of its scientific staff and its management team, the Debtor has developed a unique peptide platform for the delivery of various biotechnology products. To date, the Debtor and its subsidiary have patented thousands of peptides. Additionally, the company has a wholly-owned subsidiary, Tetragenex Pharmaceuticals, Inc., that has discovered, synthesized and is currently developing a platform of new and unique chemically-modified tetracycline molecules to be used in the treatment of certain types of cancer and antibiotic resistant bacterial infections.

4. The Debtor's lead research and development project is a new and potentially revolutionary antidepressant, Nemifitide. Nemifitide, which is administered by intermittent subcutaneous or needleless injection, has many advantages over existing products on the market today. Prior to the Filing Date, the Debtor was engaged in human clinical studies of Nemifitide and was poised to enter Phase III clinical trials, the final phase of human drug development before the drug is approved by the FDA. The FDA placed a clinical hold on further testing on Nemifitide because of some toxicity in one of the Debtor's dog studies. The Debtor believes that the clinical hold will be lifted and the drug will enter the final phase of drug development after the company completes an additional 3-month dog study and a 3-month primate study which will provide answers to the questions that the FDA has raised. The doses that were given these animals on a weight adjusted cumulative basis were as much as 329 times higher than the equivalent human dose. The Debtor believes after consulting with several of the world's leading experts on such toxicity issues, that it will be able to demonstrate either an adequate margin of safety and/or species sensitivity that often occurs with beagle dogs, which will allow the clinical hold to be potentially lifted, thus restoring the billion dollar potential for a superior drug in a 14 billion dollar market.

5. On September 15, 2003 the Debtor filed its Plan of Reorganization (the "Plan"). Under the Plan, the Debtor will obtain additional financing or investment to maintain sufficient working capital and liquidity to continue operations, which will enable the preservation of value of its

assets and result in maximum return to the Debtor, its estate and its creditors. Indeed, the Debtor's proven track record of raising some $70 million from approximately 700 accredited private investors, venture funds and institutions in 12 separate financings is a vivid demonstration of its capacity to raise funds.

6. The Plan provides that the Debtor will raise through a private placement equity offering, funds sufficient to satisfy creditor claims and to fund further studies with respect to its lead development compound, nemifitide. Several of the Debtor's officers, directors and shareholders (the "Lender Group") are willing to commit resources to fund the Debtor's operations pending confirmation of the Plan. Specifically, the Lender Group is willing to provide up to $750,000 to fund the Debtor's operations with the funds being advanced on a secured basis and bearing interest at ten (10%) percent per annum and automatically converted to equity upon the Debtor's Plan going effective and provided that the Debtor has raised at least $1.5 million in funds exclusive of the DIP Loan. The Lenders Group also will be given two warrants for every dollar advanced to the Debtor. The warrants and the equity conversion will be at the same rate as being offered under the private placement memorandum.

7. This motion is submitted in support of the Debtor's request for an order, pursuant to Section 364(c) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001 (the "Motion"), authorizing the Debtor to obtain debtor in possession financing upon the terms and conditions more fully set forth below and in the Interim Order. A copy of the Interim Order, Note Subscription Agreement, Proposed Final Order and Budgets are Exhibits to this Motion.

8. As more fully set forth herein, pending a final hearing on the Motion, the Debtor respectfully requests an interim hearing preferably before November 11, 2003, authorizing the Debtor to obtain DIP financing in an amount sufficient to enable it to continue to operate pending the final hearing. Specifically, pursuant to the budget that is Exhibit "A" to the Interim Order, the Debtor will be unable to meet its payroll and operating expenses without the use of funds provided by the Lender Group. As such, absent the requested interim relief, the Debtor will likely be forced to discontinue operations, or at the very least, such absence of immediate funding will cause serious

damage to the debtor's business and possibly jeopardize the Debtor's reorganization efforts, the result of which will render unlikely a meaningful payment to unsecured creditors in this case.

## PRIORITY STATUS/SECURITY INTERESTS

8. The Interim Order contemplates that the obligation of the Debtor to Lender Group shall:

   a. under Bankruptcy Code section 364(c), have priority over any and all administrative expenses of the kind specified in Bankruptcy Code Sections 503(b) and 507(b), subject and subordinate to fees required to be paid to the Office of the United States Trustee under 28 U.S.C. §1930(a)(6) and allowed professional fees.

   b. also under Bankruptcy Code Sections 364(c)(2) and (3), be secured by a first priority security interest in and liens (the "Senior Liens") on substantially all unencumbered property of the Debtor, now existing or hereafter acquired.

   c. it is anticipated that the DIP Financing Agreement will be for a period through the Effective Date of the Debtor's Plan of Reorganization. Upon the Effective Date, the Debtors' obligations to the Lender Group convert to equity upon the same terms as under the Private Placement Memorandum.

## LEGAL BASIS FOR THE RELIEF SOUGHT

9. The relief sought by this Motion is sought pursuant to §464(c) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001. Section 364 of the Bankruptcy Code provides as follows:

   (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt -

      (1) with priority over any or all administrative expense of the kind specified in section 503(b) or 507(b) of this title;

      (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

      (3) secured by a junior lien on property of the estate that is subject to a lien.

## THE NEED FOR IMMEDIATE RELIEF

10. Authorization for the Debtor to obtain debtor in possession financing pursuant to this Motion is necessary for the proper continued operation of the Debtor's business through

confirmation of its Plan of Reorganization. It is essential that the Debtor have immediate cash available to meet its payroll obligations and to continue the development of its compound. If the Debtor is unable to obtain the financing, the Debtor's business will be adversely affected in that the Debtor will not be able to meet its fixed overhead costs and survive until confirmation of its Plan of Reorganization. Accordingly, the Debtor believes it is in the best interest of creditors to maintain the going concern value of its business.

11. Pending the final hearing and the determination of this Motion, the Debtor seeks to obtain DIP financing on the terms and conditions set forth above to the extent necessary to avoid immediate and irreparable harm. Specifically, the Debtor needs to utilize funds in an amount great enough to meet payroll and other expenses for the weeks ended November 14, 2003.

12. Annexed to the Order as Exhibit "A", the budget indicates the Debtor's cash needs through January 31, 2004 to pay payroll, purchases and other expenses. Immediate and irreparable injury will result and harm the Debtor, if the Debtor is unable to obtain these funds to meet its cash needs.

13. If the relief sought herein is not granted, the Debtor will be unable to meet its essential expenses and will be unable to preserve its assets. In such event, all creditors and parties-in-interest will suffer immediate and irreparable harm and a loss of any expectation of recovery from the Debtor's estate and there will be less likelihood that a reorganization can be achieved.

## NOTICE

14. The Debtor proposes to provide notice of the hearings by regular mail to the twenty (20) largest unsecured creditors as listed in the Petition, counsel to the Committee, the Office of the United States Trustee for the Eastern District of New York and the United States Attorney for the Eastern District of New York.

15. No previous application for the relief requested herein has been made to this Court or

any other Court.

16. As this Motion does not raise or involve any complex or novel issues of bankruptcy law and in light of the authorities cited herein, the Debtor respectfully requests that the Court dispense with the requirement of filing a separate memorandum of law.

**WHEREFORE**, the Debtor respectfully requests entry of the annexed scheduling order as well as for the ultimate relief requested in the Motion and for such other and further relief as this Court may deem just and proper.

Dated: Jericho, New York
November 4, 2003

**SILVERMAN PERLSTEIN & ACAMPORA LLP**

By: _____
Gerard R. Luckman, Esq. (GRL#8516)
Attorneys for Debtor
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300

grl/D133506v/F046142