# EXHIBIT C

Silverman Perlstein & Acampora LLP   11-3489052
Counsel to the Debtor and the Debtor-In-Possession
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman, Esq. (GRL#8516)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
AT CENTRAL ISLIP
------------------------------------------------------------x
In re:

                                     Chapter 11
                                     Case No: 03-82550-288

        INNAPHARMA, INC.,

                       Debtor.

------------------------------------------------------------x

### ORDER (A) (i) AUTHORIZING POSTPETITION FINANCING BY LENDER GROUP, (ii) GRANTING LENDER GROUP SENIOR LIENS AND SUPERPRIORITY ON DEBTOR'S ASSETS, AND (iii) GRANTING RELATED RELIEF

Upon the Application (the "Application") of Innapharma, Inc., Debtor and Debtor-in-possession (the "Debtor"), seeking, among other things, the entry of Orders (1) authorizing the Debtor to to incur post-petition financing on an interim basis, with superpriority over administrative expenses and secured by superpriority liens pursuant to Sections 105(a), 364(d)(1) of the Bankruptcy Code (the"DIP Financing") and (2) scheduling a final hearing and establishing notice requirements pursuant to Bankruptcy Rules 2002, 4001 and 9014, and (3) providing for other related relief; and upon the hearing held on November _____, 2003 (the "Interim Hearing"); and upon there being no objection interposed at the Interim Hearing, and the Debtor demonstrating the need for post-petition financing through the Final Hearing to pay certain employee obligations and to fund the Debtor's operations (collectively, the "Immediate Obligations"); and the affidavit of service on file with the Court; and objections to the entry of this Final Order to have been filed and served three days' prior to the Final Hearing scheduled for November _____, 2003 and no objection having been received; and it appearing that, subject to the approval of this Court, the Debtor has reached an agreement with certain of its officers, directors and shareholders (the "Lender Group") for post-

1

petition financing to be provided immediately by the Lender Group in the amount of up to $750,000.00 (the "DIP Funds") for the payment of the Immediate Obligations and the ongoing costs of the estate through confirmation of the Debtor's Plan of Reorganization with (i) the Lender Group granted a first-position secured lien on all the Debtor's unencumbered assets (the "Assets").

**NOW, THEREFORE, HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1. **The DIP Funds.** The Debtor is authorized to borrow the DIP Funds from the Lender Group in the amount of $750,000.00. A first-position secured lien is hereby granted to the Lender on the Assets.

2. **Disposition.** The Application is granted, and any objections thereto that have not previously been withdrawn are hereby overruled. Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry. Each factual finding and conclusion of law set forth herein shall be limited to, and only effective to the extent of, moneys advanced, lent or used pursuant to this Order.

3. **Jurisdiction.** The Court has jurisdiction over this case, the parties and the Debtor's property pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).

4. **Purpose and Necessity of Financing.** Good cause has been shown for entry of this Order. The Debtor requires the financing described in the Application to, among other things, fund the Debtor's cash requirements, including without limitation, working capital to maintain its operations through confirmation of its Plan of Reorganization. The Debtor is unable to obtain adequate unsecured credit allowable under section 503 of the Code as an administrative expense and is unable to obtain, within the time required by its needs to avoid immediate and irreparable harm, other financing under section 364 of the Code on equal or more favorable terms than the DIP Loan Agreement and the other DIP Loan Documents. A loan facility in the amount provided by the DIP Loan Agreement is unavailable to the Debtor generally without its granting to the Lender Group,

GRL/D143116v1/F046142

pursuant to sections 364(c)(1) and (c)(2), of the Code, the following: (i) superpriority administrative claims with respect to all Loans advanced post petition and all other obligations of the Debtor under the DIP Loan Agreement and the other DIP Loan Documents (collectively, the "Post Petition Obligations"), having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 507, and 1114 of the Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment (except as otherwise expressly provided for herein with respect to the UST/Clerk Fees and a carve-out of amounts necessary to fund payments to the professionals retained by the Debtor or the Committee), and the Avoidance Claims. After considering all alternatives, the Debtor has concluded in the exercise of its prudent business judgment that this loan facility represents the best working capital financing available to it.

5. **Exigency.** The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the estate of the Debtor and its creditors, so that the Debtor can continue operating through the confirmation of its Plan. Under the DIP Loan Documents, upon the Plan going effective and provided that the Debtor has raised at least $1.5 million in funds from its Private Placement offering exclusive of the DIP funds, the DIP Loan converts to equity. Accordingly, the DIP loan will not have to be repaid and the funds from the Debtors' stock offering will be available for distribution to creditors. The preservation and maintenance of the going concern value of the Debtor is vital to enable any recovery for unsecured creditors. Absent entry of this Order, the Debtor's estate will be immediately and irreparably harmed.

6. **Good Faith Bargaining.** The DIP Loan Agreement has been negotiated in good faith and at arm's-length between the Debtor on the one hand, and the Lender Group on the other, and any Loans extended and other financial accommodations made to the Debtor by the Lender Group pursuant to this Order and the DIP Loan Agreement shall have been extended by the Lender

Group in good faith, as that term is used in section 364(e) of the Code.

7. **Borrowing Authorization.** The Debtor is immediately authorized to obtain Loans pursuant to the terms of the DIP Loan Agreement, the DIP Loan Documents, and this Order - in the principal amount of up to $750,000 inclusive of any advances previously approved. As more fully described in precatory paragraph (a) hereof, available financing and advances under the DIP Loan Agreement will be made only to fund, among other things, the Debtor's ordinary working capital and general corporate needs, in accordance with this Order and the DIP Loan Agreement and other amounts required or allowed to be paid pursuant to the DIP Loan Agreement, this Order or any other order of this Court, pursuant to a budget that is reasonable and that will enable Debtor to pay reasonably anticipated administrative expenses.

8. **Acknowledgements.** In providing for the advancement of post-petition financing under the DIP Loan Agreement, the Debtor and the Lender acknowledge, represent, stipulate and agree that:

(a) the Debtor has obtained all authorizations, consents and approvals necessary from, and have made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtor in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents to which the Debtor is a party;

(b) in entering into the DIP Loan Documents, and as consideration therefor, the Debtor hereby agrees that until such time as all Post Petition Obligations are indefeasibly paid in full in cash, the Debtor shall not in any way prime or seek to prime the liens provided to the Lender Group under this Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to section 364(d) of the Code or otherwise; and

9. **Fees.** The Lender Group has waived all origination, administration, and closing date financing fees and expenses customarily charged in connection with DIP financing, except for

Lender Group's reasonable attorneys' fees and expenses.

10. **Power to Execute Necessary Documents**. The Debtor is expressly authorized and empowered to enter into and deliver, inter alia, the DIP Loan Agreement and the other attendant DIP Loan Documents in substantially the form presented at the Interim Hearing. The Debtor is also authorized and empowered to perform all of its obligations under the DIP Loan Agreement and the other attendant DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for in this Order. The Debtor is authorized and directed to perform and do all acts that may be required in connection with the DIP Loan Agreement and the other DIP Loan Documents. The DIP Loan Agreement and the other DIP Loan Documents shall constitute valid and binding obligations of the Debtor enforceable against it, and its successors and assigns, in accordance with their terms, subject to the terms of this Order. The Debtor, with the express written consent of the Lender, may enter into any non material amendments or modifications to the DIP Loan Agreement and the other DIP Loan Documents without the need of further notice and hearing or Order of this Court; provided, that such modifications or amendments do not materially and adversely affect, in the reasonable view of the Debtor, the rights of any creditor, equity holder or party in interest. For purposes of this Order, and subject to the preceding sentence, non-material amendments or modifications to the DIP Loan Agreement and the DIP Loan Documents shall include, without limitation, clarifications of procedures and reporting requirements, insertions of incomplete information or corrections of any errors, any waivers or consents that the Lender can exercise at its discretion, or any other amendments to the DIP Loan Agreement or the other DIP Loan Documents to the extent that such amendments or modifications do not cause an increase in the $750,000 maximum amount available to be borrowed pursuant to the DIP Loan Agreement and the other DIP Loan Documents.

11. **Claim/Lien Status and Priority.** For all of the Obligations, the Lender Group is hereby granted, pursuant to sections 364(c)(1), (c)(2) and (c)(3), of the Code a first priority lien on

any property of the estate not otherwise subject to a lien, a junior lien on property of the estate that is subject to a lien and, an allowed superpriority administrative expense claim (the "Superpriority Claim"), having priority over any and all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 507, 546(c), and 1114 of the Code, subject and subordinate in priority of payment only to the UST/Clerk Fees and the Carve-Out (defined below). The superpriority liens and security interests granted herein shall have the superpriority senior secured status afforded by section 364(c) of the Code, as applicable. The liens and security interests granted to Lender Group under this Order shall continue in this and in any superseding case or cases under the Code and such liens and security interests shall maintain their priority as provided in this Order until all the Obligations have been satisfied in full.

12. **Priority of the United States Trustee and Clerk of the Court Fees**. Except as permitted herein or in the DIP Loan Documents, all of the Debtor's Obligations to the Lender Group are hereby authorized and granted superpriority administrative expense status in accordance with sections 364(c)(1) of the Code over any and all expenses of and claims against the Debtor, whether heretofore or hereinafter incurred, of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(b), 507, and to the extent permitted by law, 1114, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, subject and subordinate only to amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and the UST/Clerk Fees, and a carve out (the "Carve-Out") of an amount necessary for the reasonable fees and expenses of the professionals retained by the Debtor and the Committee.

13. **Limitation Upon Additional Surcharges**. No consent to a charge against the Collateral pursuant to sections 506(c) or 105(a) of the Code shall be implied from any action, inaction, or acquiescence by the Lender Group in this case, including but not limited to the funding, on an interim basis, of the Debtor's ongoing operations by the Lender Group. The right to seek a waiver of any surcharge against the Lender Group or the Collateral under section 506(c) or any

other section of the Code after the Final Hearing is hereby expressly preserved. In no event shall the Lender Group be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

    14.    **Lien to Secure Post Petition Obligations.** As security for all of the Post Petition Obligations, and as more fully described above and in the DIP Loan Documents, the Lender Group is hereby granted (effective immediately and without the necessity of the execution or filing by the Debtor of a security agreement, financing statements, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office or Copyright Office, mortgages, landlord lien waivers, licensee consents or otherwise), pursuant to section 364(c) of the Code, as follows: (A) a security interest in and lien upon all of the Collateral of the Debtor, subject only UST/Clerk Fees and the Carve-Out; and (B) a first position secured lien on the Assets. The security interests and liens in the Collateral granted to the Lender Group hereunder include, but are not limited to: (i) those items and types of Collateral in which security interests may be created under Article 9 of the Uniform Commercial Code; (ii) those items and types of Collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, patents, licenses issued by any federal or state regulatory authority and any leasehold or other real property interests; and (iii) the products and proceeds of any of the foregoing. The liens and security interests arising hereunder shall be and hereby are fully perfected security interests, such that no additional steps need be taken by the Lender Group to perfect such interests. Additionally, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign or otherwise transfer any such leasehold interest or the proceeds thereof or other Collateral, is and shall be deemed to be inconsistent with the provisions of the Code and shall have no force and effect with respect to the transactions granting the Lender Group a priority security interest in such leasehold interest or the proceeds of

any assignment and/or sale thereof by the Debtor in favor of the Lender Group in accordance with the terms of the DIP Loan Agreement.

15. **Application of Collateral Proceeds.** Pending the Final Hearing, the Debtor is permitted to use the cash advanced to the Debtor by the Lender Group in connection in the ordinary course of its business and in promulgating its Plan of Reorganization.

16. **Causes of Action Waived by Debtor** [Deleted].

17. **Additional Perfection Measures.** The liens and priority granted to the Lender Group pursuant to this Order and the DIP Loan Agreement and the other DIP Loan Documents with respect to property of the Debtor's estate shall be perfected by operation of law upon entry of this Order by the Court. The Lender Group shall not be required to enter into or to obtain landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, tradename or patent assignment filings with the United State Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the security interest and liens granted to the Lender Group pursuant to this Order. If the Lender Group, in its sole discretion, chooses to obtain consents from any licensor or similarly situated party in interest, to file financing statements, notices of lien or similar instruments, or to otherwise confirm perfection of such security interests and liens: (i) all such documents shall be deemed to have been recorded and filed as of the time and on the date of entry of this Order; and (ii) no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder. In lieu of obtaining such consents or filing such financing statements, notices of lien or similar instruments, the Lender may, at its sole discretion, choose to file a true and complete copy of this Order in any place at which any such instruments would or could be filed, together with a description of Collateral located within the

8

geographic area covered by such place of filing, and such filing by the Lender Group shall have the same effect as if such financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Order.

18. **No Responsible Person.** Debtor and Lender Group agree that in making the decision to make Loans and to extend other financial accommodations to the Debtor under the DIP Loan Agreement or to collect the indebtedness and obligations of the Debtor, the Lender Group shall not be deemed to be in control of the operations of the Debtor or to be acting as a responsible person or owner or operator with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal or state statute).

19. **Enabling Clause.** The Debtor is authorized to perform all acts, to make, execute and deliver all instruments and documents and to pay fees and all other amounts which may be required or necessary for their performance under the DIP Loan Agreement and the other DIP Loan Documents, including, without limitation, the execution and delivery of the DIP Loan Agreement and the other DIP Loan Documents.

20. **Successors and Assigns.** The provisions of this Order shall be binding upon the Lender Group, the Debtor and their respective successors and assigns, and shall inure to the benefit of the Lender Group and the Debtor and their respective successors and assigns.

21. **Binding Nature of Agreement.** Each of the DIP Loan Documents to which the Debtor is and will become a party shall constitute legal, valid and binding obligations of the Debtor, enforceable in accordance with this Order. Unless otherwise set forth in the DIP Loan Documents, the rights, remedies, powers, privileges, liens and priorities of the Lender provided for in this Order and in any other DIP Loan Document shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in these cases or in any subsequent case under the Code unless and until the Obligations have first

been paid in full in cash and completely satisfied.

22. **Subsequent Reversal or Modification.** This Order is entered pursuant to section 364 of the Code, granting Lender Group all protection afforded by Code section 364(e). If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred post-petition hereunder by the Debtor to the Lender Group prior to the date of receipt of written notice to the Lender of the effective date of such action; or (ii) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement. Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability incurred by the Debtor to the Lender Group prior to written notice to the Lender Group of the effective date of such action shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the DIP Loan Agreement and other DIP Loan Documents with respect to all such indebtedness, obligation or liability.

23. **No Waiver.** This Order shall not be construed in any way as a waiver or relinquishment of any rights that the Lender Group may have to bring or be heard on any matter brought before this Court.

24. **Benefits.** The Debtor will receive postpetition loans and/or advances and credit, and other direct and indirect benefits from the Lender Group authorized by this Order.

25. **Priority of Terms.** To the extent of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, the Application, any other order of this Court, or any other agreements and the express written terms and provisions of this Order unless such term or provision herein is phrased in terms of "as defined in" or "as more fully described in" the DIP Loan Agreement, the terms and provisions of this Order shall govern.

26. **Adequate Notice.** The notice given by the Debtor of the Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court. Under the

GRL/D143116v1/F046142

circumstances, no further notice of the request for the relief granted at the Hearing is required.

28.  The Clerk is hereby directed to enter this Order on the Court's docket in this case.

Dated: November ____, 2003
       Central Islip, New York

                                             _____
                                             JUDGE STAN BERNSTEIN
                                             UNITED STATES BANKRUPTCY JUDGE